MATTER OF IQAL

In Advance SECTION 212(c) Proceedings

A-3932011

*Decided by Board February 12, 1964*

An applicant for advance waiver of section 212(c), Immigration and Nationality Act, who has been excluded and deported is statutorily ineligible for such relief since he did not proceed abroad "voluntarily and not under an order of deportation" nor can his status as a lawful permanent resident be considered as not having changed.

INADMISSIBLE: Act of 1952—Section 212(a)(22) [8 U.S.C. 1182(a)(22)]—Ineligible to citizenship.

The case comes forward on appeal from the order of the District Director, Detroit District, dated September 10, 1963, denying the application for advance permission to return to an unrelinquished domicile for the reason that the applicant is not considered to be returning to an unrelinquished domicile in the United States as required by section 212(c) of the Immigration and Nationality Act since he abandoned his domicile when he failed to return to the United States before expiration of his reentry permit on January 28, 1956.

The record relates to a native of Palestine, and a citizen of Jordan, who was originally admitted for permanent residence on September 28, 1937. During 1939 the applicant went to Palestine for a visit returning May 1940 with a reentry permit. He again visited Palestine in 1946 returning April 16, 1947, on a reentry permit. Thereafter applicant continued to reside in the United States until January 1954 when he again went on a visit to his native land and he remained past the January 28, 1956, expiration date of his extended reentry permit.

This latter occurrence necessitated the applicant's application for a visa in order to return to the United States. He applied for and was issued a visa on February 5, 1957, as an immigrant under section 203(a)(2) as a parent of a United States citizen over the age of 21 years, such visa petition having been approved on September 25, 1956. The applicant applied for admission on April 3, 1957, but by order

dated July 3, 1957, a special inquiry officer held the applicant excludable under section 212(a)(22), 8 U.S.C. 1182(a)(22), as an alien ineligible to citizenship as the result of his having filed on January 15, 1943, a DSS Form 301, requesting exemption from military service as a citizen of neutral Palestine, a British mandated territory, the applicant being classified IV-C on January 18, 1943, on the basis of this request. On September 12, 1957, this Board dismissed the appeal from the exclusion decision. Thereafter he returned to Palestine to Ramallah, Jordan, with his wife and has been residing there since 1957.

The brief of counsel sets forth that in January 1954 the applicant obtained a reentry permit and left for Palestine to visit his wife and children and thereafter obtained a one-year extension of his reentry permit. By the time the second year was up it was discovered that his wife was seriously ill with cancer from which she eventually died. He was compelled to remain in Palestine beyond the validity period of his reentry permit to help care for the four of his seven children the eldest three sons having immigrated to the United States in 1947, 1951, and 1955 respectively. In 1957 the doctors in Palestine suggested to the applicant that his wife should be brought to the United States for an operation which might save her life. On the basis of visa petitions filed by his citizen son, Salim, on behalf of his mother and father, the American Consul issued second preference immigration visas to them. Five of the applicant's seven children are now in the United States, three of them being citizens and the other two resident aliens.

In 1961 a private bill (H.R. 87-1867) was introduced into Congress which failed of enactment. A report from the Director of the Visa Office received in December 1960 in connection with a prior bill (H.R. 12638) stated that in 1954 the applicant went back to Palestine and resumed farming his lands; that after his exclusion in 1957 he and his wife returned to Ramallah, Jordan, where he has since been residing. When interviewed, the Embassy found that the applicant failed to disclose a material fact relating to his draft exemption status to the visa issuing officer when he obtained an immigrant visa in 1957; however, it has been determined that the misrepresentation, while material, was not willful.

In his brief counsel contends that the denial of the application for section 212(c) waiver on the ground that the alien abandoned his domicile when he failed to return to the United States before expiration of his reentry permit on January 28, 1956, is improper; that absence alone does not establish abandonment of United States residence; and that the burden of proving abandonment is on the Government. Counsel cites cases to support his argument that absence for a

number of years does not establish that the applicant abandoned his domicile in the United States. He argues that the applicant should have sought a nonquota returning resident visa under section 101(a)(27)(B) after first obtaining an advance waiver under section 212(c) instead of the second preference visa which he did obtain. Counsel urges that the applicant never gave up his desire to resume domicile in this country after his exclusion and return to Palestine in 1957. Counsel concedes that the applicant will be required to make application for a returning resident visa at the American consulate but because of the bar of section 212(a)(22) the consul must deny such an application for a returning resident visa in any event. He argues that the failure of the applicant to obtain an advance waiver under section 212(c) when he left the United States in 1954 should not be held against him and his failure to request the special inquiry officer to ignore the quota visa and to consider granting him a waiver visa under section 211(b) as well as a section 212(c) should also be ignored because of the humanitarian and mitigating circumstances of the case.

Section 212(c) provides that aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) through (25) and that nothing obtained under that subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first question to be decided is whether the alien temporarily proceeded abroad voluntarily and not under an order of deportation.

Section 212(c) of the Immigration and Nationality Act of 1952 was a successor to the somewhat similar provision contained in the 7th Proviso to section 3 of the Immigration Act of 1917 which provided that aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years might be admitted in the discretion of the Attorney General and under such conditions as he might prescribe. In interpreting this provision it was held in *Matter of S—*, 1 I. & N. Dec. 646 (Attorney General 1944), that where an alien had seven years actual residence in the United States and subsequently departed under an order of deportation, such deportation in and of itself did not operate to terminate domicile in the United States and preclude the alien from consideration under the 7th Proviso to section 3 of the Immigration Act of 1917, as amended. It was also held that an alien *deported* or *excluded* before acquiring the statutory domicile of seven years could not thereafter acquire it through lapse of time and failure on his part to concur in the legislative mandate under which he was barred from the country. It was held that

one who left *voluntarily* could tack on periods of residence where no formal exclusion or deportation order had been entered.[1] The holding in *Matter of S—*, *supra*, was chipped away somewhat by allowing the tacking on of a short period (one week) to make up seven years domicile in the United States despite his departure under an order of deportation.[2] *In Matter of M—*, 4 I. & N. Dec. 82 (Attorney General (1950)), it was held that this holding did not overrule the prior holding in *Matter of S—*, 1 I. & N. Dec. 376, at page 383, that where an alien resided in the United States for four years and was excluded thereafter, the word "domicile" as used in the 7th Proviso to section 3 of the Immigration Act of 1917, as amended, contemplated actual residence or place of abode and that it might be interrupted by *deportation* or *exclusion*.

The legislative history throws very little light on the reason for the change in language of the present section 212(c) of the Immigration and Nationality Act of 1952 as compared to the wording of the 7th Proviso to section 3 of the Immigration Act of 1917, as amended. There was criticism of the use of the 7th Proviso to section 3 of the Immigration Act of 1917 and the suggestion was made that if the words "established after a lawful entry for permanent residence" were inserted in the 7th Proviso to qualify the domicile of the alien it would effectively eliminate practically all of the objectionable features and at the same time the Attorney General would be left with sufficient discretionary authority to admit any lawfully resident alien returning from a temporary visit abroad to a lawful domicile of seven consecutive years. The subcommittee recommended that the proviso should be limited to aliens who have the status of lawful permanent residents who are returning to a lawful domicile of seven consecutive years after a temporary absence abroad and that they must have proceeded abroad voluntarily and not under an order of deportation to be eligible for the relief. Senate Report No. 1515 (81st Cong., 2d Sess.) pp. 383–384 (April 20, 1950). In the House Report to accompany H.R. 5678 and the Senate Report to accompany S. 2550,[3] it was set forth that under present law (7th Proviso to section 3 of the 1917 Act) the case of an alien returning after a temporary absence during an unrelinquished United States domicile of seven consecutive years, he could be admitted in the discretion of the Attorney General; that under existing law the Attorney General was thus empowered to waive the grounds of exclusion in the case of an alien returning under the

---

[1] *Matter of C—*, 2 I. & N. Dec. 168.
[2] *Matter of C—*, 1 I. & N. Dec. 631.
[3] House Report No. 1365, 2805 and Senate Report No. 1137, 12, 82d Cong., 2d Sess. (1952).

specified circumstances even though the alien had never been lawfully admitted to the United States. The comparable discretionary authority vested in the Attorney General in section 212(c) of the bill is limited to cases where the alien has been previously admitted for lawful permanent residence *and has proceeded abroad voluntarily and not under an order of deportation.* No explanation is offered for the italicized portion.

In the instant case the applicant was ordered excluded by a decision of the special inquiry officer dated July 3, 1957, on the ground that he was inadmissible under section 212(a)(22) of the Immigration and Nationality Act as ineligible to citizenship. The appeal from this exclusion decision was dismissed by the Board on September 12, 1957, and subsequently, probably during the same year, although this does not appear, he was deported to Jordan.

Inasmuch as section 212(c) of the Act requires as a ground of eligibility that the alien be lawfully admitted for permanent residence and temporarily proceed abroad voluntarily and not under an order of deportation, this applicant, who was forced into return to his native land subsequent to the order of exclusion can hardly be said to have departed voluntarily and not under an order of deportation.

It is noted that section 212(a)(16) of the Immigration and Nationality Act refers to aliens who have been excluded from admission and deported and that section 212(a)(17) refers to aliens who have been arrested and deported insofar as permission to reapply is concerned. However, the language of section 212(c) does not appear to draw any distinction between those who have been excluded and deported and those who have been arrested and deported but requires that an alien temporarily proceed abroad voluntarily and not under an order of deportation. It is not specified whether the order of deportation shall be the result of an exclusion or deportation proceeding and the legislative history of the Act fails to shed any light thereon. However, the language should be read in its ordinary meaning and for the purposes of this provision of the Act, no distinction appears to have been made between those who have been ordered deported as a result of exclusion and those who have been ordered deported as the result of deportation.

Section 101(a)(20) of the Immigration and Nationality Act defines the term "lawfully admitted for permanent residence" as meaning the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Inasmuch as the applicant's departure from the United States in 1957 was an

enforced one and was not voluntary, it is difficult to conceive of the applicant's status as not having changed.[4]

The order of the District Director denying the application because the applicant is not considered to be returning to an unrelinquished domicile in the United States as required by section 212(c) of the Immigration and Nationality Act since he abandoned his domicile when he failed to return to the United States before the expiration of his reentry permit on January 28, 1956, is not regarded as setting forth the true reason for denial. We conclude that the applicant is ineligible for section 212(c) relief because he is not one who temporarily proceeded abroad "voluntarily and not under an order of deportation." In addition, it is noted that when the applicant last sought to enter the United States in 1957 he was coming on a second preference visa and not as a returning resident and there is no evidence that the American consul would be willing to issue him a visa under section 101(a)(27)(B) of the Immigration and Nationality Act as a returning resident. In addition, the case does not appear to be a proper one for consideration at the present time because of the absence of any evidence that the applicant is returning to a lawful unrelinquished domicile of seven consecutive years. However, we rest our denial primarily upon the first reason advanced, namely, that the applicant is ineligible for section 212(c) relief because he did not temporarily proceed abroad voluntarily but was forced to return to his native country under an order of deportation following his exclusion from the United States.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.

---

[4] In *Matter of T—*, 6 I. & N. Dec. 778, an alien who had become a permanent resident of the United States in 1921 and who was repatriated to Japan in August 1942 was held not eligible for relief pursuant to section 212(c) of the Immigration and Nationality Act since it cannot be said that the applicant's status has not changed or that he departed "voluntarily" within the meaning of section 212(c) of the Immigration and Nationality Act.