# Matter of Andres ARMENDAREZ-Mendez, Respondent

File A014 720 015 - Laredo

*Decided October 6, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Pursuant to 8 C.F.R. § 1003.2(d) (2008), the Board of Immigration Appeals lacks authority to reopen removal, deportation, or exclusion proceedings–whether on motion of an alien or sua sponte–if the alien has departed the United States after those administrative proceedings have been completed.

FOR RESPONDENT: Fred Kowalski, Esquire, Brownsville, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Anibal D. Martinez, Deputy Chief Counsel

BEFORE: Board Panel: FILPPU, PAULEY, and HESS, Board Members.

PAULEY, Board Member:

On December 11, 2000, the respondent was removed from the United States pursuant to a final administrative order of removal issued by this Board. Approximately 67 months later, he filed a motion requesting that we reopen his proceedings sua sponte. In a decision dated September 26, 2006, we denied the motion pursuant to 8 C.F.R. § 1003.2(d) (2006), which states in relevant part that "[a] motion to reopen . . . shall not be made by or on behalf of a person who is the subject of . . . removal proceedings subsequent to his or her departure from the United States." The respondent thereafter filed a petition for review with the United States Court of Appeals for the Fifth Circuit, which has remanded the matter to us "to consider the questions raised by the Ninth Circuit's holding in [*Lin v. Gonzales*, 473 F.3d 979 (9th Cir. 2007)]." For the reasons that follow, we reiterate that we lack jurisdiction over the respondent's motion, which will therefore be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent, a native and citizen of Mexico, was ordered removed in 2000 because of his 1995 conviction for possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), an "aggravated felony" within

the meaning of section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000). During the respondent's initial proceedings before the Immigration Judge, he requested a waiver under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), but the Immigration Judge pretermitted that request pursuant to the Attorney General's then-controlling decision in *Matter of Soriano*, 21 I&N Dec. 516, 533-40 (BIA 1996; A.G. 1997). The respondent filed a timely appeal to this Board in which he reiterated his claim to eligibility for section 212(c) relief, but we dismissed the appeal in a final order dated November 13, 2000. On December 11, 2000, the Department of Homeland Security ("DHS")[1] physically removed the respondent to Mexico pursuant to our order.

In July 2006, the respondent filed the motion at issue here, in which he requested that we reopen his removal proceedings sua sponte to permit him to file an application for section 212(c) relief pursuant to *INS v. St. Cyr*, 533 U.S. 289 (2001). Motions seeking section 212(c) relief based on that decision are subject to a regulatory filing deadline of April 26, 2005, *see* 8 C.F.R. § 1003.44(h) (2006), and cannot be filed at all by aliens who are outside the United States or who have illegally reentered the country after removal. 8 C.F.R. § 1003.44(k). The respondent's motion violated those regulatory requirements, so he sought sua sponte reopening instead. We denied the motion for lack of jurisdiction in our September 26, 2006, decision, which we are now called upon to revisit.

## II. ISSUE

The issue before us on remand is whether we have jurisdiction to entertain the respondent's motion requesting sua sponte reopening of his removal proceedings, where that motion was filed after the respondent's departure from the United States pursuant to a final administrative order of removal.

## III. ANALYSIS

### A. Motions To Reopen and the "Departure Bar"

Since this Board was established in 1940 we have had the regulatory power to entertain motions, subject to such limitations as the Attorney General may

---

[1] On March 1, 2003, the former Immigration and Naturalization Service ("INS") was abolished and its functions were transferred to the Department of Homeland Security pursuant to Title IV of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2177. To avoid confusion, the former INS will be referred to in this decision as the DHS.

prescribe. *See* Regulations Governing Departmental Organization and Authority, 5 Fed. Reg. 3502, 3504 (Sept. 4, 1940) (codified at 8 C.F.R. § 90.9). The particular limitation at issue here, the so-called "departure bar," was first imposed in 1952, by means of a regulation that stated as follows, in pertinent part:

> A motion to reopen or a motion to reconsider [before the Board of Immigration Appeals] shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure of such person from the United States occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

Immigration and Nationality Regulations, 17 Fed. Reg. 11,469, 11,475 (Dec. 19, 1952) (codified at 8 C.F.R. § 6.2). Despite the passage of more than 55 years, the language of the current regulation bears a strong resemblance to that of its earliest predecessor:

> A motion to reopen or a motion to reconsider [before the Board of Immigration Appeals] shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

8 C.F.R. § 1003.2(d) (2008). Essentially identical language appears in the regulation governing the filing of motions in Immigration Court. 8 C.F.R. § 1003.23(b)(1) (2008).

As early as 1954, we construed the departure bar rule as imposing a limitation on our jurisdiction to entertain motions filed by aliens who had departed the United States. *Matter of G- y B-*, 6 I&N Dec. 159, 159-60 (BIA 1954). We have reiterated that construction of the rule in an unbroken string of precedents extending over 50 years, consistently holding that reopening is unavailable to any alien who departs the United States after being ordered removed. *Matter of G-N-C-*, 22 I&N Dec. 281, 288 (BIA 1998); *Matter of Okoh*, 20 I&N Dec. 864, 864-65 (BIA 1994); *Matter of Estrada*, 17 I&N Dec. 187, 188 (BIA 1979), *rev'd on other grounds*, *Estrada-Rosales v. INS*, 645 F.2d 819 (9th Cir. 1981); *Matter of Palma*, 14 I&N Dec. 486, 487 (BIA 1973); *accord Matter of Yih-Hsiung Wang*, 17 I&N Dec. 565 (BIA 1980). Indeed, this jurisdictional principle is so well established that the respondent expressly acknowledged its applicability in his motion, observing that "the BIA and the IJs do not have jurisdiction to consider a motion to reopen brought by a respondent who is outside of the United States, or reenter [sic] illegally into the United States," but asserting that "they retain the jurisdiction

to reopen these cases on their own motion." *But see Navarro-Miranda v Ashcroft*, 330 F.3d 672, 675-76 (5th Cir. 2003) (upholding our determination that we lack authority to reopen proceedings—even sua sponte—with respect to aliens who have departed the United States).

### B. Federal Circuit Court Decisions Interpreting 8 C.F.R. § 1003.2(d)

In 1961, nearly a decade after the departure bar rule went into effect, Congress imposed a similar statutory restriction prohibiting the United States courts of appeals from reviewing deportation orders if the alien "has departed from the United States after issuance of the order." *See* Act of September 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651 (codified at section 106(c) of the Act, 8 U.S.C. § 1105a(c) (1964)). While that preclusion was in effect, the Federal circuit courts had no occasion to review Board decisions denying motions under the departure bar rule. In 1996, however, Congress repealed former section 106 of the Act and replaced it with a new set of rules governing judicial review of removal orders. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, § 306, 110 Stat. 3009-546, 3009-607 (effective Sept. 30, 1996) ("IIRIRA"). Under those rules, an alien's departure from the United States no longer forecloses judicial review. *See, e.g.*, *Dada v. Mukasey*, 128 S. Ct. 2307, 2320 (2008); *Lopez v. Gonzales*, 127 S. Ct. 625, 629 n.2 (2006).[2]

After enactment of the IIRIRA, several Federal circuit courts, including the Fifth Circuit, have interpreted the departure bar in a manner consistent with our traditional understanding of that rule. *See Navarro-Miranda v. Ashcroft*, *supra*; *see also Shah v. Mukasey*, 533 F.3d 25, 27 (1st Cir. 2008); *Mansour v. Gonzales*, 470 F.3d 1194, 1200 (6th Cir. 2006); *Singh v. Gonzales*, 468 F.3d 135, 140 (2d Cir. 2006). However, in *Lin v. Gonzales*, *supra*, and *Reynoso-Cisneros v. Gonzales*, 491 F.3d 1001, 1002 (9th Cir. 2007), the Ninth

---

[2] In *Lopez v. Gonzales*, *supra*, at 692 n.2, the Supreme Court found that the case was not moot despite the alien's deportation, stating that "Lopez can benefit from relief in this Court by pursuing his application for cancellation of removal, which the Immigration Judge refused to consider after determining that Lopez had committed an aggravated felony." We of course do not review the Supreme Court's determination whether a case before it is moot. We note, however, that the Court did not specifically address the departure bar regulation at issue here. The Court's footnote appears to have sprung from the Government's brief acquiescing in the granting of the petition for a writ of certiorari, which stated at footnote 5 therein, without mentioning the regulation at 8 C.F.R. § 1003.2(d), that "were this Court to decide that [Lopez's] cocaine conviction is not an aggravated felony, the Board would address petitioner's request for cancellation of removal, which is a form of relief that petitioner can continue to pursue in administrative proceedings even while he is in Mexico."

Circuit espoused an interpretation of the departure bar rule that departs substantially from our own. Furthermore, shortly after the Fifth Circuit remanded this case to us, a divided panel of the Fourth Circuit invalidated 8 C.F.R. § 1003.2(d) outright, concluding that it is inconsistent with relevant portions of the Immigration and Nationality Act. *William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007). The Fifth Circuit remanded this matter to us with instructions to consider the issues raised in *Lin v. Gonzales*, *supra*. However, in order to ensure as comprehensive a treatment of the subject as possible, we will also address *William v. Gonzales*, *supra*, in this decision. We begin by discussing *Lin v. Gonzales*, however, because it is the decision that prompted the present remand.

### 1. *Lin v. Gonzales*

In *Lin v. Gonzales*, *supra*, the Ninth Circuit reviewed a Board order dismissing Mr. Lin's appeal from an Immigration Judge's decision denying his motion to reopen under 8 C.F.R. § 1003.23(b)(1). That regulation, which is substantively identical to 8 C.F.R. § 1003.2(d) but applicable to motions made before Immigration Judges, provides that "[a] motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal . . . proceedings subsequent to his or her departure from the United States." After quoting that language, the *Lin* court held as follows:

> The government argues that under the regulation "a motion to reopen '[can]not be made' by an alien who was in proceedings after the alien's 'departure from the United States.'" We disagree. The regulation is phrased in the *present* tense and so by its terms applies only to a person who departs the United States while he or she "*is* the subject of removal . . . proceedings." Because petitioner's original removal proceedings were completed when he was removed to China, he did not remain the subject of removal proceedings after that time. While the regulation may have been intended to preclude aliens in petitioner's situation from filing motions to reopen their completed removal proceedings, the language of the regulation does not unambiguously support this result. Because ambiguity must be construed in favor of the petitioner, we decline to adopt the government's construction of the regulation and cannot affirm the denial of petitioner's motion to reopen on this ground.

*Lin v. Gonzales*, *supra*, at 982 (citations omitted). In a subsequent precedent, the Ninth Circuit applied this same rationale to declare that removed aliens were also not subject to the Board's departure bar rule. *Reynoso-Cisneros v. Gonzales*, *supra*. We respectfully disagree with the Ninth Circuit's understanding of the departure bar regulations.

The *Lin* and *Reynoso-Cisneros* courts held that the departure bar is ambiguous because its reference to a person who "is the subject of" removal proceedings may have been intended to apply only to a person against whom

removal proceedings are pending, and not to a person whose removal proceedings have been completed. The Ninth Circuit's interpretation is not foreclosed as a matter of formal grammar. However, we are mindful of the Supreme Court's axiom that "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994); *see also National Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2534 (2007) (holding that "'[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000))). When the departure bar rule is examined in context, we believe it clearly applies to removed aliens.

The departure bar precludes certain aliens from filing motions to *reopen* removal proceedings. With respect to the Board, the filing of a motion to "reopen" presupposes that the administrative proceedings have been "closed" or completed, typically by entry of a final administrative order of removal.[3] Indeed, the close connection between reopening and "completed" proceedings is reflected in the statutory scheme, under which the 90-day deadline for filing a motion to reopen is measured from "the date of entry of a final administrative order of removal." Section 240(c)(7)(C)(i) of the Act, 8 U.S.C. § 1229a(c)(7)(C)(i) (2006). Because the completion of proceedings is a condition precedent to the filing of a motion to reopen with the Board, we cannot reasonably interpret 8 C.F.R. § 1003.2(d) as applying only to motions filed by aliens in *ongoing* proceedings.[4] The situation is slightly different in Immigration Court, where motions to reopen may sometimes be filed by aliens whose removal orders have not yet achieved "finality" by virtue of the prospect of further administrative review by the Board. Even so, however,

---

[3] Some aliens voluntarily depart the United States at the conclusion of removal proceedings, but a voluntary departure order is no less a consummation of the proceedings than a final order of removal. *Matter of Goolcharan*, 23 I&N Dec. 5, 7 (BIA 2001). In other cases, removal proceedings are rendered "final" by issuance of an order terminating proceedings or granting relief, but for obvious reasons aliens rarely seek reopening in such cases.

[4] A motion to *remand* under 8 C.F.R. § 1003.2(c)(4) resembles a motion to reopen in some respects, but such a motion does not seek "reopening" in the literal sense because the Immigration Judge's underlying decision—which may or may not have contained an order of removal—is not "final" while it is on review before the Board. We observe that, in contrast to the reopening regulations at issue here, the regulations addressing the waiver or withdrawal of an appeal, 8 C.F.R. §§ 1003.3(e) and 1003.4 (2008), do properly employ the present tense (i.e., "a person who is the subject of" removal proceedings) since those regulations cover aliens who depart the United States either prior to the taking of an appeal or during the pendency of an appeal.

such motions would implicate the *Lin* court's departure bar rule in only a small number of cases, if ever.[5]

Moreover, treating the departure bar as applying only to aliens who leave the country during ongoing proceedings would render 8 C.F.R. § 1003.2(d) superfluous, because the Board has *never* had authority to entertain motions filed by such aliens. Under our regulations, the departure of an alien whose proceedings are pending before the Board effects an automatic withdrawal of the alien's appeal, such that the decision of the Immigration Judge becomes final to the same extent as though no appeal had been taken. *See* 8 C.F.R. § 1003.4 (2008); *see also Long v. Gonzales*, 420 F.3d 516, 519-21 (5th Cir. 2005). The consequence of such a "withdrawal by departure" is that the Board dismisses the appeal for lack of jurisdiction and returns the record to the Immigration Court. Having rendered no decision in the matter, the Board is thus without authority to act in the event the alien later seeks reopening. *Matter of Anselmo*, 20 I&N Dec. 25, 33 (BIA 1989); *Matter of Mladineo*, 14 I&N Dec. 591, 592 (BIA 1974). In short, because 8 C.F.R. § 1003.4 deprives the Board of jurisdiction over motions filed by aliens who departed the United States during the pendency of their proceedings, the interpretive approach adopted by the *Lin* and *Reynoso-Cisneros* courts leaves 8 C.F.R. § 1003.2(d) with no practical effect.

We are familiar with the principle, adverted to by the *Lin* court, that "lingering ambiguities in deportation statutes" must be construed "in favor of the alien." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987). We understand this principle to be one of "last resort," however, employed only after the other traditional methods of interpreting the statutory or regulatory text have failed to resolve an ambiguity. *E.g.*, *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008); *Burgess v. United States*, 128 S. Ct. 1572, 1580 (2008); *Ruiz-Almanzar v. Ridge*, 485 F.3d 193, 198 (2d Cir. 2007); *Lisbey v. Gonzales*, 420 F.3d 930, 933 (9th Cir. 2005). If the doctrine of "lenity" were to be applied whenever there is ambiguity in an immigration provision, that doctrine would entirely supplant the concept of administrative deference

---

[5] Indeed, under *Lin* the only way an alien could run afoul of the departure bar would be to reserve appeal and then both file a motion to reopen with the Immigration Judge *and* depart the country before the expiration of the 30-day deadline for filing an appeal to the Board. In all other cases, the Immigration Judge's decision would either have become "final," *see* 8 C.F.R. § 1003.39 (2008), meaning that the alien would no longer be one who "is the subject of" removal proceedings, or the Immigration Judge would have lost authority over the motion simply by virtue of the vesting of appellate jurisdiction with the Board. 8 C.F.R. § 1003.23(b)(1) (authorizing an Immigration Judge to reopen or reconsider any case in which he or she has made a decision, "unless jurisdiction is vested with the Board of Immigration Appeals"). We think it implausible that the departure bar can be reasonably interpreted to apply only to such an unusual set of facts.

announced in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Yet the Supreme Court has expressly held that *Chevron* deference is appropriate to the resolution of ambiguities in the immigration statute. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) ("It is clear that principles of *Chevron* deference are applicable to [the immigration] statutory scheme."); *see also Dada v. Mukasey*, *supra*, at 2319 (settling an unresolved statutory paradox under the Immigration and Nationality Act, but acknowledging that a "regulation might be adopted to resolve the dilemma in a different manner"). Thus, we respectfully decline to adopt the "rule of lenity" as a threshold interpretive methodology.

Finally, the "ambiguity" identified by the *Lin* and *Reynoso-Cisneros* courts pertains solely to the administrative motions regulations, and the Supreme Court has held that an administrative agency's interpretation of its own regulations is entitled to "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *INS v. Stanisic*, 395 U.S. 62, 72 (1969) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *see also Ali v. Gonzales*, 435 F.3d 544, 546 (5th Cir. 2006). As we explained earlier, the departure bar has been a part of our regulatory framework for more than half a century, and it has been construed in many of our precedent decisions to preclude the filing of motions by aliens who have departed the United States after the conclusion of proceedings. The *Lin* and *Reynoso-Cisneros* courts did not discuss those precedents or declare them "plainly erroneous or inconsistent with the regulation," and we are not persuaded that our decisions were wrongly decided. Moreover, the Fifth Circuit has issued no precedent that is contrary to our own. Therefore, for the reasons previously stated, we reaffirm our established understanding of the regulation and respectfully decline to follow *Lin v. Gonzales*, *supra*, and *Reynoso-Cisneros v. Gonzales*, *supra*, even within the Ninth Circuit. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005); *INS v. Stanisic*, *supra*.

## 2. *William v. Gonzales*

Although we continue to espouse our traditional understanding of the departure bar rule, we recognize that a divided panel of the Fourth Circuit has declared 8 C.F.R. § 1003.2(d) to be invalid on its face, based on its ostensible inconsistency with the Act. *William v. Gonzales*, *supra*. The majority in *William* based its decision on a set of closely reasoned arguments relating to the interplay between the statutory and regulatory schemes governing motions. In order to explain our respectful disagreement with those arguments, we must first lay the groundwork by examining the relevant statutes and regulations in some detail.

As we noted previously, the Board has always had the *regulatory* power to entertain motions, but for the first half-century of our existence, there was no statute delineating the scope or limits of that power. The first statutory treatment of motions before the Board came in section 545(d) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5066 ("1990 Act"), in which Congress directed the Attorney General to establish regulatory time and number limits on motions in order to prevent unwarranted delay in the execution of final deportation orders. The Attorney General implemented that statutory mandate by comprehensively reorganizing the Board's motions regulation in a set of final rules issued in April 1996. Among other things, those rules limited aliens to filing a single motion to reopen and required that any such motion be filed within 90 days after entry of the final administrative order of removal, deportation, or exclusion.[6] The departure bar was retained in the new regulations at 8 C.F.R. § 3.2(d) (1997). *See* Executive Office for Immigration Review; Motions and Appeals in Immigration Proceedings, 61 Fed. Reg. 18,900, 18,905 (Apr. 29, 1996).

While section 545(d) of the 1990 Act represented a step toward the imposition of statutory limits on the filing of motions, the first true statutory codification of such limits did not occur until Congress enacted section 304(a) of the IIRIRA, 110 Stat. at 3009-593. That statute incorporated substantial portions of the Attorney General's regulatory framework, including the time and number limits on motions, while enumerating a number of exceptions to those limits, which were also derived from the regulations. *Id.* (codified at sections 240(c)(5) and (6) of the Act, 8 U.S.C. §§ 1229a(c)(5) and (6) (Supp. II 1996)). Notably, the departure bar was not expressly incorporated into the new statutory scheme.

The majority in *William v. Gonzales*, *supra*, concluded that the Board's departure bar rule was inconsistent with the statutory changes made by section 304(a) of the IIRIRA, for three principal reasons. First, the majority concluded that the IIRIRA amendments had "at least implicitly repealed" the departure bar by granting all aliens an unambiguous right to "file one motion to reopen" removal proceedings, without expressly differentiating between aliens who had remained in the United States after being ordered removed and those who had departed. *Id.* at 332 & n.2. Secondly, the majority concluded that the departure bar had been repealed by "'negative inference'" because, unlike the

---

[6] We refer to motions to reopen other than those seeking rescission of in absentia orders of removal, which are not involved here and are subject to different time and number limits. Indeed, we express no opinion on whether an alien's departure would foreclose the filing of a rescission motion, as rescission can be viewed as vacating the in absentia removal order from the outset. *See Contreras-Rodriguez v. U.S. Att'y Gen.*, 462 F.3d 1314 (11th Cir. 2006).

regulatory time and number limits on motions, it had not been incorporated into section 304(a) of the IIRIRA. *Id*. at 333 (quoting *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2765 (2006)).

In further support of its argument by negative inference, the *William* court observed that Congress had carved out an exception to the time and number limits for certain victims of domestic battery but had limited the availability of that exception to aliens who were "physically present" in the United States at the time of filing. *Id*. (citing section 240(c)(7)(C)(iv)(IV) of the Act). In the majority's view, the natural inference to be drawn from the imposition of a physical presence requirement for those filing special motions was that Congress intended not to impose such a requirement on those who filed general motions. *Id*. Finally, the *William* majority invoked the rule against superfluities, concluding that application of the regulatory departure bar would render superfluous Congress's enactment of the aforementioned "physical presence" requirement for motions filed by aliens who had been victims of domestic battery. *Id*. For the reasons that follow, we respectfully disagree with the *William* court's analysis.[7]

The *William* court made a notable point when it observed that section 240(c)(7) of the Act does not expressly distinguish between aliens who have departed the United States after being ordered removed and those who have remained. In our view, however, the Act taken as a whole *does* draw such a distinction. *See Dada v. Mukasey*, *supra*, at 2317 ("'In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy.'") (quoting *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991)).

In many ways the structure of the present immigration system is predicated on the assumption that the physical removal of an alien from the United States

---

[7] The *William* majority found the statute to be unambiguous, so its decision constitutes binding precedent in removal proceedings arising within the jurisdiction of the Fourth Circuit. We perceive some tension, however, between *William* and the Supreme Court's recent precedent in *Dada v. Mukasey*, *supra*, which treated the departure bar rule as a valid constraint on the Board's authority to adjudicate motions filed by the beneficiaries of voluntary departure orders. *Id.* at 2315, 2318-20. Such treatment was essential to the *Dada* Court's portrayal of the problem to be remedied, i.e., that "the alien who is granted voluntary departure but whose circumstances have changed in a manner cognizable by a motion to reopen is between Scylla and Charybdis: He or she can leave the United States in accordance with the voluntary departure order; but, pursuant to [8 C.F.R. § 1003.2(d)], the motion to reopen will be deemed withdrawn. Alternatively, if the alien wishes to pursue reopening and remains in the United States to do so, he or she risks expiration of the statutory period and ineligibility for adjustment of status, the underlying relief sought." *Id*. at 2318 (citations omitted). We acknowledge, however, that neither party to *Dada v. Mukasey*, *supra*, challenged the validity of 8 C.F.R. § 1003.2(d).

is a transformative event that fundamentally alters the alien's posture under the law. Indeed, the ultimate purpose of a removal proceeding is, with respect to removable aliens, precisely to bring about such a physical departure. As a rule, once an alien has been removed, his underlying removal order is deemed executed, the proceedings that led to that order are consummated, and whatever immigration status the removed alien may have possessed before departure is vitiated. *Mrvica v. Esperdy*, 376 U.S. 560, 563-64 & n.4, 567-68 (1964); *Matter of Lok*, 18 I&N Dec. 101, 106 (BIA 1981); *Matter of Mosqueda*, 14 I&N Dec. 55, 56-57 (R.C. 1972); *see also* section 101(g) of the Act, 8 U.S.C. § 1101(g) (2006) ("[A]ny alien ordered deported or removed . . . who has left the United States, shall be considered to have been deported or removed in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed."); *cf. also Matter of Iqal*, 10 I&N Dec. 460, 464-65 & n.4 (BIA 1964).

The consequence of departure for a removed alien is thus not just physical absence from the country, but also a nullification of legal status, which leaves him in no better position after departure than *any other alien* who is outside the territory of the United States. In fact, an alien who physically departs the United States after being ordered removed is in a substantially *less* advantageous position than other aliens, because the existence of a removal order renders him or her inadmissible and vulnerable to heightened criminal sanctions and expedited removal procedures in the event of unlawful reentry. *See* sections 212(a)(9)(A), (B)(i), (C)(i)(II), 241(a)(5), 276(a) of the Act, 8 U.S.C. §§ 1182(a)(9)(A), (B)(i), (C)(i)(II), 1231(a)(5), 1326(a) (2006). Furthermore, an alien who has been removed is, like any other alien, forbidden from crossing into the territory of United States except upon compliance with the documentary and inspection requirements of the Act and its implementing regulations.

Responsibility for border security and the inspection and admission of aliens from abroad is delegated to the Secretaries of Homeland Security and State, but *not* to this Board. Thus, our inability to entertain motions filed by aliens who have departed the United States is not just a matter of administrative convenience. It is also an expression of the limits of our authority within the larger immigration bureaucracy. Removed aliens have, by virtue of their departure, literally passed beyond our aid.[8] And the statutory scheme as a

---

[8] It may be that some removed aliens could obtain permission from the DHS to lawfully reenter the United States for the purpose of pursuing reopening. Moreover, a removed alien whose removal order is vacated by a Federal court of appeals or the United States Supreme Court might also be permitted to lawfully reenter the United States and continue to pursue

(continued...)

whole does not contemplate that a removed alien can circumvent the entire admission and inspection regime simply by moving to reopen, especially where such a motion is filed after the movant has unlawfully reentered the United States. On the contrary, because the distinction between aliens who have been removed and those who have not is so deeply ingrained in the structure and policy of the Act, we are averse to any inference that Congress meant to repeal the departure bar sub silentio simply because it did not expressly reiterate that distinction in the language of section 240(c)(7) of the Act.

With all due respect, we are also reluctant to accept the *William* court's determination that the regulatory departure bar was repealed by "negative inference" because Congress did not incorporate it into the statutory language of section 240(c)(7) of the Act. We see nothing in the language or legislative history of section 304(a) of the IIRIRA that would lead us to conclude that it was intended to override the existing regulatory scheme governing the filing and adjudication of motions in removal proceedings. Rather, that amendment simply gave statutory weight to the existing time and number limits on motions. H.R. Rep. No. 104-828, at 212 (Sept. 24, 1996) (Conf. Rep.), 1996 WL 563320.[9]

---

(...continued)

any remedy that falls within the scope of the Court's mandate. *See Lopez v. Gonzales*, *supra*, at 629 n.2. The point, however, is that the Immigration Judges and this Board have been given no authority to compel the DHS to admit or parole such aliens into the United States.
[9] When the Attorney General proposed amendments to the Board's motions rules in response to the IIRIRA, several commentators suggested that the repeal of former section 106(c) of the Act (which had barred deported aliens from filing petitions for review before the Federal courts of appeals) necessitated deletion of the departure bar from the final rule. The Attorney General rejected that suggestion:

> The Department has decided not to adopt this suggestion and the interim regulations will not be changed. No provision of . . . the Act supports reversing the long established rule that a motion to reopen or reconsider cannot be made in immigration proceedings by or on behalf of a person after that person's departure from the United States. . . . The Department believes that the burdens associated with the adjudication of motions to reopen and reconsider on behalf of deported or departed aliens would greatly outweigh any advantages this system might render.

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,321 (Mar. 6, 1997) (Supplementary Information). This determination, made by the Attorney General in the Supplementary Information to a formal rule, is binding on the Board. *See Matter of A-S-B-*, 24 I&N Dec. 493, 496 & n.3 (BIA 2008).

In our view, this limited legislative purpose cautions against the drawing of expansive negative inferences. Indeed, such inferences, carried to their logical conclusion, would arguably invalidate the entire regulatory scheme governing motions. For example, the Act only authorizes the filing of motions from "a decision that the alien is removable from the United States" or from "a final administrative order of removal." Sections 240(c)(6)(A), (7)(C)(i) of the Act. But the regulations authorize aliens to file many *other* types of motions, such as "motions to remand," 8 C.F.R. §§ 1003.2(b)(1), (c)(4), and motions to reconsider that challenge the validity of interlocutory orders, orders denying relief from removal, or orders denying motions to reopen, 8 C.F.R. § 1003.2(b)(2). None of these types of motions is expressly authorized by the language of the Act, yet we think it unreasonable to assume that Congress has forbidden them by negative inference. By the same token, we do not consider Congress's silence regarding the validity of the departure bar to be evidence of its renunciation.

Finally, we respectfully disagree with the *William* court's conclusion that the departure bar was implicitly invalidated by Congress's enactment of a "physical presence" requirement for the filing of motions by certain victims of domestic battery. The provision in question, which was added to the statute in 2006, states that victims of family violence who move to reopen removal proceedings for the purpose of seeking certain enumerated forms of relief are not subject to the general time and number limits on motions to reopen if they are, among other things, "physically present in the United States at the time of filing the motion." Section 240(c)(7)(C)(iv)(IV) of the Act. According to the *William* court, the fact that this special physical presence requirement is not echoed in the general rules governing motions gives rise to the negative inference that Congress intended general motions to be available to aliens who are *not* physically present in the United States, thereby invalidating the departure bar by implication. Furthermore, in the *William* court's judgment the departure bar is invalid because its applicability would render the aforementioned "physical presence" requirement superfluous.

We acknowledge that there is some incongruity between the departure bar rule and the "physical presence" requirement that applies to motions filed by victims of family violence.[10] Moreover, we are mindful of the proposition that a regulation may sometimes be superseded by the implications of a later statute, at least where that statute was intended to effect a comprehensive change in prior law. *United States v. Fausto*, 484 U.S. 439, 453 (1988). In this instance, however, we have no reason to think that the physical presence

---

[10] The respondent does not claim to be a victim of family violence so we have no present occasion to decide how the departure of such a victim from the United States would affect our jurisdiction.

requirement was intended to repeal the departure bar by implication or to otherwise effect any global change in long-standing law. On the contrary, it seems clear that the physical presence requirement has a much narrower purpose, and operates solely within the context of Congress's special rules for battered aliens. An examination of the statutory context in which the physical presence requirement was enacted helps to illustrate our point.

The original statutory framework created by section 304(a) of the IIRIRA contained no special rules for motions filed by the victims of domestic battery. Rather, the exceptions to the time and number limits on motions now set forth at section 240(c)(7)(C)(iv) of the Act were first promulgated several years later, in connection with the 2000 reauthorization of the Violence Against Women Act, a broad legislative movement designed to enhance the protections available to victims of domestic violence in all areas of federal law. Victims of Trafficking and Violence Protection Act of 2000, Div. B of Pub. L. No. 106-386, tit. V, § 1506(c)(1)(A), 114 Stat. 1464, 1528 ("VTVPA"); *see also* H.R. Rep. No. 106-939, at 113-14 (2000) (Conf. Rep.), 2000 WL 1479163 (explaining that the rationale for VTVPA § 1506 was to protect aliens who were the victims of domestic abuse from inadvertently becoming disqualified for relief as a result of interference from their abusive relatives). Having created a humanitarian exception to the general time and number limits on motions, however, Congress also created some uncertainty as to the breadth of the exception. Most importantly, the language of the exception as originally drafted was broad enough, given the VTVPA's overtly remedial purpose, that it could have been read to authorize the filing of motions from outside the United States if the movant otherwise satisfied the statutory requirements.

Such an expansive reading of the VTVPA did not survive the 2005 amendments to that statute, which "clarified," among other things, that all special motions had to be filed by aliens who were "physically present" in the United States. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825(a)(2)(F), 119 Stat. 2960, 3063-64 (Jan. 5, 2006) ("VAWA 2005"); *see also* H.R. Rep. No. 109-233, at 123-24 (2005), 2005 WL 2331498 (emphasizing that section 825(a)(2) of the VAWA 2005 was a "clarifying" amendment). Our research into the legislative history of the VAWA 2005 amendments has not uncovered any clearly stated rationale for the "physical presence" requirement. However, the creation of that requirement does not suggest to us that Congress intended to repeal the departure bar or otherwise change the general rules governing the filing of motions. On the contrary, the sequence of statutory enactments leading to the physical presence requirement suggests, if anything, that

Congress was simply trying to delimit the exception it had created several years earlier in the VTVPA.[11]

In any case, we do not believe it is necessary to know the precise rationale behind the physical presence requirement in order to assess the continuing validity of the departure bar regulation as applied to cases that are not covered by the VAWA. As we see it, the special rules for VAWA motions, and the subsequent refinements to those rules, reflect no goal other than to create special rules for victims of family violence. Thus, to the extent any tension exists between the physical presence requirement and the departure bar, we believe the tension is best resolved by simply recognizing that the physical presence requirement is unique. In other words, we see the VAWA provisions as being self-contained and not designed to impact the law that governs all other aliens.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the departure bar rule remains in full effect. We therefore respectfully decline to apply *Lin v. Gonzales*, *supra*, and *Reynoso-Cisneros v. Gonzales*, *supra*, in cases arising in the Ninth Circuit, and we will limit the application of *William v. Gonzales*, *supra*, to cases arising in the Fourth Circuit. *See supra* n.7. Moreover, since the respondent is disabled by the departure bar from invoking our jurisdiction to consider his motion, we are likewise without jurisdiction to consider his motion sua sponte. *Navarro-Miranda v. Ashcroft*, *supra*, at 675-76 (upholding as reasonable our finding that sua sponte jurisdiction does not exist in this circumstance). Accordingly, the respondent's motion to reopen will be denied.

**ORDER:** The motion to reopen is denied.

---

[11] Because the physical presence requirement of VAWA 2005 is best understood as having been enacted as a point of special emphasis, clarifying the scope of a prior exception to the general motions rules, it is not rendered superfluous by the departure bar. *See Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831, 840 (2008) (holding the rule against superfluities inapplicable where Congress may have enacted technically redundant or unnecessary language as a point of special emphasis in order "to remove any doubt" on the point in question).