# United States Court of Appeals
## For the First Circuit

No. 09-2072

MANUEL PEÑA-BELTRE,

Petitioner,

v.

ERIC H. HOLDER JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Selya and Boudin, <u>Circuit Judges</u>.

<u>Jose G. González-Hernández</u> was on brief for petitioner.
<u>Tim Ramnitz</u>, Attorney, Office of Immigration Litigation, <u>Tony West</u>, Assistant Attorney General, Civil Division, and <u>Shelley R. Goad</u>, Assistant Director, were on brief for respondent.

October 13, 2010

**LYNCH**, **Chief Judge**.  Manuel Peña-Beltre, a native and citizen of the Dominican Republic, petitions for review of a final order of removal issued by the Board of Immigration Appeals (BIA).  The BIA upheld an Immigration Judge's (IJ) finding of removability and denial of Peña-Beltre's requests for (1) removal of the conditions on his conditional lawful residence status and (2) voluntary departure.  Both the BIA and the IJ found Peña-Beltre had engaged in marriage fraud in order to obtain an immigration benefit.  We deny his petition.

I.

Peña-Beltre entered the United States without inspection on or about September 1, 1996.  On January 25, 2001, he married a United States citizen, Vilma Toro-Berrios.  Within two weeks, on February 6, 2001, Peña-Beltre filed an application to adjust his status to that of lawful permanent resident on the basis that he and Toro-Berrios were married and lived together as husband and wife.

Under the Immigration and Nationality Act, an alien may receive lawful permanent resident status by virtue of marriage to a United States citizen.  8 U.S.C. § 1186a.  If the marriage is less than two years old when the alien receives permanent resident status, the grant of such status is conditional.  8 U.S.C. § 1186a(1).  The alien and spouse must submit a second petition to remove the conditions, at which point the alien's lawful permanent

-2-

status may be terminated if the government finds that the marriage was not bona fide. 8 U.S.C. § 1186a(c),(d). If the conditions are not removed within two-years, the alien's permanent resident status is terminated. 8 U.S.C. § 1186a(c)(3)(C).

On April 12, 2002, Peña-Beltre and Toro-Berrios appeared before an Immigration and Naturalization Service (INS) Adjudications Officer. In separate sworn statements, they each claimed that they had married for love and resided together as husband and wife. The Officer granted Peña-Beltre lawful residence on a conditional basis under 8 U.S.C. § 1186a. On March 1, 2004, Peña-Beltre and Toro-Berrios filed an I-751 joint petition to remove the conditions on Peña-Beltre's lawful permanent residence. Like the sworn statements, the petition claimed that Peña-Beltre and Toro-Berrios lived together as husband and wife.

In response to the I-751 joint petition, on November 14, 2005, Adjudication Officer Martin Garcia of the United States Citizenship and Immigration Services (USCIS) conducted separate interviews with Peña-Beltre and Toro-Berrios to assess the bona fides of their marriage.[1]

Garcia first interviewed Toro-Berrios. When Garcia confronted Toro-Berrios with inconsistencies in her testimony, she admitted that the marriage was fraudulent. In both oral testimony

---

[1] In the interim, USCIS and Immigration and Customs Enforcement had assumed the relevant duties of the INS.

and a sworn statement, Toro-Berrios stated that she had never lived with Peña-Beltre and that Peña-Beltre had offered her $2,000 to marry him and had paid $500. This confirmed a similar statement Toro-Berrios made in a call to the INS on September 20, 2001, about seven months before Peña-Beltre received lawful conditional permanent resident status.[2]

Garcia then interviewed Peña-Beltre. He found inconsistencies between Toro-Berrios' testimony and Peña-Beltre's. They gave conflicting statements about the name of the person who took Toro-Berrios' daughters to school, the year in which Toro-Berrios had last been employed, and the person who gave Toro-Berrios the necklace she was wearing. When Garcia confronted Peña-Beltre with Toro-Berrios' admission, Peña-Beltre stated that he did not know why she had said this and suggested it might be a product of depression.

At the end of the interview, Garcia referred Peña-Beltre to Agent Juan Rivera of the Immigration and Custom Enforcement's (ICE) fraud division. In conducting a pat down search of Peña-Beltre, Rivera discovered handwritten notes in his wallet. The notes appeared to be answers prepared in anticipation of questions about the contents of their apartment, the patterns of their daily

---

[2]    In that call, Toro-Berrios informed an INS investigator that her marriage with Peña-Beltre was fraudulent and that she did not live with him. She said that Peña-Beltre had promised her $2,000 in exchange for marriage, gave her $500, but would not give her the remainder of the money.

living, and the members of Toro-Berrios' family.  When Rivera confronted Peña-Beltre with the notes, Peña-Beltre admitted that he had not been living with Toro-Berrios for the past two years.

Peña-Beltre told Rivera that they had planned what to say during the interview and gave a sworn statement that he married Toro-Berrios to obtain an immigration benefit.  Peña-Beltre denied that he and Toro-Berrios had an agreement whereby he would provide financial benefits to her in exchange for marriage.  He admitted, however, that an individual named Aladino Días arranged for him to meet and marry Toro-Berrios in order to receive an immigration benefit.  According to Peña-Beltre, the couple had lived together for two years before separating.

At the conclusion of the interview, Rivera served Peña-Beltre with a Notice to Appear, which charged him with removability under 8 U.S.C. § 1227(a)(1)(A) as an alien who sought to procure immigration status by fraud or willful representation under 8 U.S.C. § 1182(a)(6)(C)(i).  Shortly thereafter, USCIS denied Peña-Beltre's and Toro-Berrios' joint petition to remove the conditions on his resident status.  On April 18, 2006, Peña-Beltre was served with an additional charge of removability under 8 U.S.C. § 1227(a)(1)(D)(i), as his permanent resident status had been terminated.

On April 11, 2006, Peña-Beltre filed a second I-751 petition.  This petition requested a discretionary waiver of the

joint petition requirements under 8 U.S.C. § 1186a(c)(4)(B). Peña-Beltre claimed he was eligible for waiver because his marriage to Toro-Berrios had been in good faith but ended in divorce. With the petition, Peña-Beltre submitted an affidavit from Toro-Berrios. The affidavit stated that their marriage was for love and that their divorce resulted from a deterioration of the relationship. On February 28, 2007, USCIS denied this petition.

Before the IJ, Peña-Beltre conceded removability but denied having committed marriage fraud. He did not testify on his own behalf. Instead, he presented testimony from three neighbors, whose accounts of when they encountered Toro-Berrios near Peña-Beltre's apartment did not align. The government introduced testimony from immigration personnel, including Garcia and Rivera. When asked about a videotape of his interviews of November 14, 2005, Garcia testified that it must have been misplaced. The government also presented Toro-Berrios as a witness in the expectation that she would repeat her prior admissions of marriage fraud.

On the stand, however, Toro-Berrios did not make a similar admission. Initially she testified that she did not recall her November 14, 2005, interview with Garcia. When the government presented Toro-Berrios' sworn statement from that interview, she claimed that the statement was false and that Garcia had pressured her into making it. Toro-Berrios admitted that she had never lived

-6-

with Peña-Beltre, but claimed that they had married for love. She claimed that they lived separately because her public housing development was safer for her children and did not permit illegal aliens to live in the apartments. According to Toro-Berrios, she spent some weekends at Peña-Beltre's apartment.

On further questioning, Toro-Berrios admitted that she had been living with another man, Felix Garcia-Torres, the father of one of her children. She first testified that Garcia-Torres moved into her apartment in approximately September, 2005. When the government asked her if she had been living with Garcia-Torres during the November 14, 2005, interview, Toro-Berrios recanted her earlier testimony and stated that Garcia-Torres did not move in with her until after her divorce from Peña-Beltre. In response to questioning about the state of her relationship with Peña-Beltre at the time of the interview on November 14, 2005, Toro-Berrios invoked the Fifth Amendment and refused to testify further.

After she testified, the government introduced testimony about a conference call the previous day in which Toro-Berrios allegedly admitted to the government's lawyer and an ICE agent that the marriage was fraudulent.

The IJ denied relief, finding that Peña-Beltre and Toro-Berrios "pretended to have a marital relationship." The IJ found Toro-Berrios not credible given the inconsistency of her statements before both the court and immigration officials. The IJ found it

relevant that Peña-Beltre did not testify and found the testimony of his witnesses highly questionable given the tensions between their accounts. Instead, the IJ credited the testimony of the immigration officials who conducted the November 14, 2005, interviews. Peña-Beltre's marriage fraud, the IJ held, rendered him ineligible for his waiver petition and cast sufficient doubt upon his moral character to foreclose voluntary departure.

The BIA affirmed. It held that there was "no evidence in the record" to support Peña-Beltre's claim that he married Toro-Berrios in good faith. The BIA credited the statements Peña-Beltre and Toro-Berrios signed at the interview of November 14, 2005, admitting fraud. It deemed it significant that Peña-Beltre refused to testify and that Toro-Berrios invoked the Fifth Amendment when questioned about her earlier statements.

## II.

In his petition for review, Peña-Beltre makes three claims. First, he contests the IJ's finding, affirmed by the BIA, that he committed marriage fraud. Second, he claims that his due process rights were violated both when the IJ drew an adverse inference from Toro-Berrios' invocation of the Fifth Amendment and when the IJ did not require that the government produce a missing videotape of the November 14, 2005, interview. Third, he claims that he was improperly denied voluntary departure.

This court reviews the BIA's decision as well as any portions of the IJ's opinion adopted by the BIA. <u>Bonilla</u> v. <u>Mukasey</u>, 539 F.3d 72, 76 (1st Cir. 2008). We review the BIA's conclusions of law de novo and its findings of fact under the deferential substantial evidence standard. <u>Toribio-Chavez</u> v. <u>Holder</u>, 611 F.3d 57, 62 (1st Cir. 2010). We may reverse the agency's factual findings only if the petitioner shows that any reasonable fact finder would have concluded to the contrary. <u>Syed</u> v. <u>Ashcroft</u>, 389 F.3d 248, 251 (1st Cir. 2004).

An alien spouse may remove the conditional basis of his lawful permanent status in one of two ways. First, the alien and his spouse may file a joint petition stating that the marriage is bona fide and has not been judicially annulled or terminated for reasons other than the death of a spouse. 8 U.S.C. § 1186a(c)(1). After filing, the couple may be required to appear for a personal interview concerning the facts of their petition. 8 U.S.C. § 1186a(c)(1)(B). In removal proceedings, the government bears the burden of showing marriage fraud by a preponderance of the evidence. 8 U.S.C. § 1186a(c)(3)(D).

Second, the alien may request a discretionary waiver of the joint filing requirement if he shows that at least one of three conditions obtains. 8 U.S.C. § 1186a(c)(4). The condition at issue here allows waiver if the marriage was entered into in good faith, the marriage was terminated for reasons other than death,

-9-

and the alien was not at fault for failing to meet the joint petition and interview requirements.  8 U.S.C. § 1186a(c)(4)(B). The alien bears the burden of showing that he qualifies for a discretionary waiver under this provision.

For Peña-Beltre, both paths to lawful resident status require a showing that his marriage to Toro-Berrios was bona fide. Any difference as to burdens is not material to this case.  Here, the evidence of marriage fraud is so overwhelming that it hardly needs detailing.  The government has more than met its burden of proof.  We rest on the BIA's and IJ's conclusions, which are amply supported by the evidence we have described.

Peña-Beltre's purported due process claims fail.  He brings both claims for the first time in this court.  Because Peña-Beltre could have but did not raise these claims before the BIA, we lack jurisdiction over them.  Bollanos v. Gonzales, 461 F.3d 82, 87 (1st Cir. 2006).[3]

Peña-Beltre's request for voluntary departure also fails for lack of jurisdiction.  Peña-Beltre claims that the BIA erred in

---

[3]    These claims are not even colorable.  The IJ did not err in drawing an adverse inference from Toro-Berrios' choice to invoke the Fifth Amendment.  Adverse inferences may be drawn from silence in removal hearings.  INS v. Lopez-Mendoza, 468 U.S. 1032, 1043-44 (1984).  Nor did the IJ err in not requiring the government to produce the missing videotape.  In deportation proceedings, due process requires that an alien not be prevented from reasonably presenting his case.  Orehhova v. Gonzales, 417 F.3d 48, 52 (1st Cir. 2005).  Here, Peña-Beltre had ample opportunity to cross-examine the government's witnesses, provide his own testimony, and introduce other testimony to challenge the government's claims.

affirming the IJ's finding that he was ineligible for voluntary departure because he was not, as required by 8 U.S.C. § 1229c(b)(1)(B), a person of "good moral character" for the preceding five years. Peña-Beltre claims that he did not commit marriage fraud, and that the IJ therefore abused her discretion in denying his request. This court has no jurisdiction to review denials of voluntary departure. 8 U.S.C. § 1229c(f); <u>Hussain</u> v. <u>Holder</u>, 576 F.3d 54, 58-59 (1st Cir. 2009).

The petition is <u>denied</u>.

<u>          So ordered</u>.