# United States Court of Appeals

## For the First Circuit

No. 10-2112

OLEKSANDR ROMER,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, and Thompson,
Circuit Judges.

Gregory Romanovsky for petitioner.
Lisa Morinelli, Attorney, Office of Immigration Litigation,
with whom Tony West, Assistant Attorney General, Civil Division,
and Douglas E. Ginsburg, Assistant Director, Office of Immigration
Litigation, were on brief for respondent.

December 12, 2011

**THOMPSON**, **Circuit Judge**. Oleksandr Romer, a citizen of Ukraine who is married to a United States citizen, asks that we overturn an immigration-court decision denying his motion to reopen removal proceedings as time- and number-barred, rejecting his request that the time and number limitations be tolled, ordering him removed to Ukraine, and imposing a ten-year bar on any adjustment of status because he overstayed an earlier voluntary-departure deadline. Finding that the immigration court inadequately explained its rationale for rejecting tolling and imposing the ten-year bar, we grant the petition for review, vacate the decision below, and remand.[1]

Romer entered the United States on a visitor's permit in 1999. He overstayed the permit, and the government initiated removal proceedings. On November 8, 2005, an immigration judge (IJ) granted Romer voluntary departure by March 8, 2006. In an effort to remain in the country legally, Romer enlisted the services of attorney Vladislav Sirota after (he says) Sirota told him that he could successfully challenge the IJ's decision.

---

[1] Judge Boudin writes separately to express his quite reasonable view that the IJ conducted so little substantive analysis because she found Romer to be not credible and therefore unable to meet his evidentiary burden. We see the case a little differently, but agree with him that if the IJ intended an adverse credibility determination then she did not adequately explain that conclusion. In any event, the fact that the IJ's decision is susceptible of significantly different but still reasonable readings further demonstrates its overall insufficiency.

-2-

Sirota's first order of business was to file a timely motion to reopen removal proceedings — Romer's first such motion. The IJ denied the motion on January 16, 2006, and mailed a copy to Sirota; Sirota (Romer says) never passed the message on to him. And so Romer remained in the country while his voluntary-departure deadline came and went.

Beginning in November 2005 and continuing for years, Romer and his wife (they say) called Sirota's office once every few months to find out how the case was progressing. They say they were rarely able to speak directly with Sirota, but that they were often reassured by staff that cases like his can take time. They also say Sirota's office advised them that Romer did not need to leave the country and could wait out his case's resolution — even after immigration officers came to his home looking for him. In 2008, Sirota sought an additional $4,000 from Romer for another motion, claiming he had to apprise the immigration court of Romer's wife's change from lawful permanent resident to citizen. Romer paid the $4,000 fee in full.

On April 15, 2010, Romer was arrested, and he has remained in custody ever since. On April 25, 2010, an attorney at Sirota's firm filed a motion to reopen — Romer's second — that was nearly a carbon-copy of the first. The IJ again denied the motion, observing that Romer had already reached his limit of one motion to

reopen under 8 C.F.R. § 1003.23(b).[2]  The IJ further determined that, because Romer had overstayed his voluntary departure period, 8 U.S.C. § 1229c(d)(1)(B)[3] imposed an absolute ten-year bar on any adjustment of status.

Several days later, Romer's wife hired attorney Gregory Romanovsky to help Romer out of his predicament.  Romanovsky filed another motion to reopen — Romer's third — this time based on Sirota's alleged incompetence and the case Matter of Lozada, 19 I. & N. Dec. 637 (B.I.A. 1988).[4]  Romanovsky also argued that the time[5] and number limitations of § 1003.23(b) should be equitably tolled because Romer diligently pursued what he thought were legitimate means to remain in the country, and that the ten-year bar should not apply because Romer did not voluntarily overstay his term for

---

[2] "Subject to [certain] exceptions" not applicable to this case, "a party may file only one motion to reconsider and one motion to reopen proceedings."

[3] "[I]f an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien . . . (B) shall be ineligible, for a period of 10 years, to receive any further relief under this section and sections 1229b, 1255, 1258, and 1259 of this title."

[4] To prevail on a motion to reopen for ineffective assistance of counsel under Matter of Lozada, a claimant must (1) include an affidavit describing the allegedly incompetent attorney's actions, (2) give the attorney notice and an opportunity to respond, and (3) submit a complaint to the appropriate bar authority.  Dawoud v. Holder, 561 F.3d 31, 34 n.3 (1st Cir. 2009).  It is undisputed that Romer met these procedural requirements.

[5] 8 C.F.R. § 1003.23(b)(1) and 8 U.S.C. § 1229a(c)(7)(C)(i) both require that a motion to reopen be filed no more than ninety days after the entry of a final order of removal.

-4-

departure but instead reasonably relied on counsel's advice that he could remain in the United States.

For the third time, the immigration court denied Romer's motion to reopen. The IJ brushed aside Romer's claim that he had been misled, concluding that the new allegations were nothing more than "excuses" for disregarding the court's then-five-year-old voluntary-departure order. The Board of Immigration Appeals (BIA) affirmed without comment, and this appeal followed. We have jurisdiction under 8 U.S.C. § 1252. See Neves v. Holder, 613 F.3d 30, 35 (1st Cir. 2010); see also Kucana v. Holder, 130 S. Ct. 827, 840 (2010).

Where the BIA affirms without issuing an opinion, we focus our review on the IJ's decision. Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009). We review the denial of a motion to reopen for abuse of discretion. Aponte v. Holder, 610 F.3d 1, 4 (1st Cir. 2010). Abuse-of-discretion review entails significant deference to the IJ's fact-finding and de novo review of any legal conclusions. Vas dos Reis v. Holder, 606 F.3d 1, 3 (1st Cir. 2010). The abuse-of-discretion standard also means that we review immigration courts' explanations for at least minimal adequacy, "because 'cursory, summary or conclusory statements . . . leave us to presume nothing other than an abuse of discretion.'" Aponte, 610 F.3d at 4 (quoting Onwuamaegbu v. Gonzales, 470 F.3d 405, 412 (1st Cir. 2006)). In the end, then, "we will vacate the decision

below if the [immigration court] committed a material error of law or failed to articulate its reasoning adequately." Id. at 5. Here, we will apply this standard to Romer's two arguments: that the time and number restrictions on his motion to reopen should be equitably tolled, and that imposition of the ten-year adjustment-of-status bar was inappropriate because his failure to timely depart was not voluntary.

First, Romer asks us to find that equitable considerations allow him to escape the time and number restrictions that doomed his motion to reopen. Generally speaking, "[t]he motion to reopen is a procedural device [that] serves to ensure that aliens get a fair chance to have their claims heard." Id. (quoting Kucana, 130 S.Ct. at 837) (internal quotation marks omitted). But motions to reopen come with significant limitations: in the usual case, a party may file only one such motion, 8 C.F.R. § 1003.23(b)(1); 8 U.S.C. § 1229a(c)(7)(A), and must do so within 90 days of the final removal order, 8 U.S.C. § 1229a(c)(7)(C)(i).

In general, equitable principles may apply to ease the strict application of procedural limitations. Bay State HMO Management, Inc. v. Tingley Systems, Inc., 181 F.3d 174, 182 (1st Cir. 1999) ("Equity demands that we not allow . . . draconian result[s] to turn on . . . procedural quirk[s]."). These principles' application in the immigration context is not always so clear-cut; for example, the BIA has held that ten-year adjustment-

of-status bars — the principle we discuss next — are not subject to equitable easing. See In re Zmijewska, 24 I. & N. Dec. 87, 93 (B.I.A. 2007). But in the case of subsequent, untimely-filed motions to reopen, at least one other circuit has held that equitable tolling may apply to allow such a motion in the proper case. See Iavorski v. INS, 232 F.3d 124, 134 (2d Cir. 2000).

Romer asks us to join the Second Circuit and apply equitable tolling here, but we need not go so far. We have previously declined to decide whether time and number restrictions on motions to reopen may be equitably tolled, see Neves, 613 F.3d at 35-36; Chedid v. Holder, 573 F.3d 33, 37 (1st Cir. 2009), and do so again today. We conclude instead that the IJ produced (and the BIA silently endorsed) a deficient decision that too casually glossed over the question whether tolling might apply.

In rejecting Romer's request for relief from the time and number restrictions on motions to reopen, the IJ's decision lacks any equitable tolling analysis. Where Romer cited tolling cases and discussed how they might apply to his situation, the IJ only referred vaguely to Romer's "looking for ways or alternatives to circumvent" his obligation to depart, and his "disregarding deadlines and orders." These vague references ignore Romer's argument, ignore arguably applicable law, and cross the line from merely deficient to plainly arbitrary. See Aponte, 610 F.3d at 4; see also Le Bin Zhu v. Holder, 622 F.3d 87, 91 (1st Cir. 2010)

-7-

(abuse of discretion includes "exercis[ing] judgment in an arbitrary . . . way"). Under these circumstances, we think remand is necessary. On remand, the IJ should consider whether equitable tolling is available to Romer on his motion to reopen.[6]

Second, Romer asks us to find that attorney misadvice rendered his failure to timely depart involuntary, thus saving him from the ten-year adjustment-of-status bar. The immigration code plainly bars an alien who "voluntarily fails to depart" from adjusting his immigration status for the next ten years. 8 U.S.C. § 1229c(d)(1). Earlier versions of section 1229c allowed immigrants to escape the ten-year bar in cases involving "exceptional circumstances," but Congress amended the statute in 1996 to remove that allowance and include instead the word "voluntarily." See Zmijewska, 24 I. & N. Dec. at 90-91. We have already mentioned above that the bar is not subject to equitable easing, id. at 93, so the only way Romer can avoid application of

---

[6] The government argues that we should affirm the IJ's decision because Romer failed to establish prejudice, a necessary element of an ineffective-assistance claim. See Orehhova v. Gonzales, 417 F.3d 48, 52 (1st Cir. 2005). The IJ made no such determination, and we would just as soon avoid usurping the immigration courts' role on the cold record before us. The government is, of course, free to raise this argument on remand.
We pause here to highlight one bizarre element of the government's brief: as evidence of Romer's ill intent, the government notes that Romer "still has not departed." Romer has been in the custody of the United States for a year and a half, so his failure to depart in that time can hardly be held against him.

the ten-year bar is if his failure to depart was not "voluntary."[7]
Id.

Again, though, rather than going on to analyze the voluntariness of Romer's failure to depart, we instead conclude that the IJ's decision so inadequately deals with this argument that it constitutes an abuse of discretion.

In imposing the ten-year bar against Romer, the IJ offered nothing approaching reasoning. Again, Romer cited law that could plausibly afford him relief. Again, the IJ ignored that law and said she was "not convinced of the excuses provided by the respondent." And again, the IJ's failure to engage with Romer's arguments crossed the line from deficient to arbitrary. See Aponte, 610 F.3d at 4. On remand, the IJ should consider whether Romer's remaining in the country on counsel's erroneous and bad-faith advice (a factual premise the IJ is free to accept or reject on consideration of the evidence) rendered his noncompliance involuntary.[8]

The IJ and BIA committed an abuse of discretion by failing to address adequately Romer's potentially winning

---

[7] There is also an exception for Violence-Against-Women-Act petitioners, but this exception is not at issue here. See 8 U.S.C. § 1229c(d)(2).

[8] We pause again to express further agreement with Judge Boudin that the immigration courts should perhaps be more cautious in invoking the ten-year bar, which can have drastic if not draconian consequences for possibly well-meaning immigrants.

arguments.[9]  For this reason, we grant the petition for review and remand for consideration of (1) whether equitable principles mean Romer's third motion to reopen is properly before the immigration courts, and (2) whether Romer is indeed subject to the ten-year bar on status adjustments because he remained in the country voluntarily.  **So ordered.**


**-Concurring Opinion Follows-**

---

[9] We stress, however, that we take no position on these arguments' ultimate merit.

**BOUDIN, <u>Circuit Judge</u>, concurring.** In this case, Romer filed a third motion to reopen his removal proceedings; five years earlier he was granted a voluntary departure order. He contends that he did not subsequently depart because he had filed a timely motion to reopen the original order and--for a number of years--had been misled by his counsel into believing that the motion was still pending and that his voluntary departure commitment was suspended during this pendency. In fact, the motion had been denied not long after its filing.

The Immigration Judge ("IJ") denied the third motion to reopen, indicating that she did not believe Romer's professions that he had been misled. Romer's account of his counsel's alleged misbehavior had some corroboration from his pastor and other documents, but some evidence arguably cast doubt on his account. Although the IJ found that Romer was merely "looking for ways" to "circumvent" his promise to depart, the IJ did not grapple directly with Romer's detailed explanation and the Board of Immigration Appeals ("Board") merely affirmed without explanation.

Even if Romer's contention that he had been misled is to be believed, he faces two further problems: first, that under the governing regulation and statute, 8 C.F.R. § 1003.23(b)(1); 8 U.S.C. § 1229a(c)(7)(A), 1229a(c)(7)(C)(i), he was permitted only one motion to reopen filed within 90 days of the final order of removal; and second, the IJ noted that a failure to depart

-11-

voluntarily as promised implicated a ten year bar on the kind of relief that Romer might otherwise pursue to remain in -- or return to -- the country based on his wife's achievement of citizenship, which occurred well after Romer agreed to the original order to depart.  8 U.S.C. § 1229c(d)(1).

However, some circuits have allowed equitable tolling to be applied to both the time and number bar on succeeding petitions.[10]  As for the ten year bar, the Ninth Circuit, consistent with a Board decision, has suggested that it might not apply if the party who had voluntarily agreed to depart was misled or not informed of the obligation to depart by counsel.[11]  These are issues seemingly open in this circuit and can be deferred unless and until they are necessarily posed and adequately briefed.

The IJ is perhaps not to be faulted for failing to address those legal issues in detail because the IJ did not credit Romer's profession that he had been misled by counsel.  Unless Romer had been misled, there would be little basis for any claim of equitable tolling that might otherwise be available.  But that negative credibility finding, not adequately explained, does need

---

[10] Zhao v. INS, 452 F.3d 154, 157-60 (2d Cir. 2006); Ray v. Gonzales, 439 F.3d 582, 590 (9th Cir. 2006).  But see Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1150 (11th Cir. 2005).  Compare Peralta v. Holder, 567 F.3d 31, 34 (1st Cir. 2009)

[11] See Singh v. Holder, 658 F.3d 879, 2011 U.S.App. LEXIS 14873, at *16-18; (9th Cir. 2011); In re Zmijewska, 24 I & N. Dec. 87, 93-94 (B.I.A. 2007)

to be revisited--unless the Board wishes to assume the correctness of Romer's factual allegations because its disposition of the legal issues would be dispositive.

Finally, even if equitable tolling were ultimately rejected, the IJ and Board might wish to be cautious in invoking the ten-year bar on adjustment of status which could have adverse consequences for Romer over and above removal. In principle, Romer might be able to avoid the ten-year bar based on an exception seemingly recognized by the Board (see note 11, above), even if he is still removable at this time based on his original commitment to depart voluntarily.