# United States Court of Appeals
## For the First Circuit

No. 12-1807

LUCIA MARIA BOLIEIRO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, Lipez, and Kayatta,
Circuit Judges.

Kerry E. Doyle for petitioner.
Greg D. Mack, Senior Litigation Counsel, Office of Immigration
Litigation, with whom Stuart F. Delery, Principal Deputy Assistant
Attorney General, Civil Division, and Terri J. Scadron, Assistant
Director, were on brief, for respondent.

September 27, 2013

**LIPEZ, Circuit Judge**.  Lucia Maria Bolieiro was the respondent in lengthy removal proceedings involving her reentry into the United States after her mandated removal.  These proceedings culminated in her filing of a motion to reopen with the immigration judge ("IJ") that raised due process and ineffective assistance of counsel claims.  After that motion and a subsequent motion to reconsider were both denied, she appealed to the Board of Immigration Appeals ("BIA").  Relying on a set of  regulations known collectively as "the post-departure bar," 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1), the agency concluded that it lacked jurisdiction to entertain her motion and dismissed her appeals.

In Perez Santana v. Holder, No. 12-2270 (1st Cir. Sept. 27, 2013), which we issue in conjunction with this opinion, we hold that the post-departure bar conflicts with the unambiguous language of the motion to reopen statute.  See 8 U.S.C. § 1229a(c)(7)(A).  As a result, the agency's regulation, in the circumstances applicable to this petition for review, cannot preclude Bolieiro from vindicating her statutory right to seek reopening of her removal proceedings.  Although the government seeks to distinguish Bolieiro's case on the basis that her motion was filed outside the ninety-day deadline set forth in the motion to reopen statute, the agency's denials of Perez Santana's and Bolieiro's petitions ultimately rest on the same basic rationale:  the post-departure bar prevents the agency from entertaining their motions to reopen.

-2-

Under well-settled rules governing agency review, we are unable to substitute an alternative basis for the agency's conclusion and therefore cannot distinguish the two cases on the grounds the government now advances. Thus, our holding in <u>Perez Santana</u> compels us to grant Bolieiro's petition, and we remand for further proceedings before the agency.

**I.**

Bolieiro's removal proceedings have followed a long and winding road through the immigration system. This appeal, however, requires knowledge of only a relatively narrow set of facts. We briefly recount them.

## A. Factual Background

In 1972, Bolieiro entered the United States as a lawful permanent resident ("LPR"). After living in the country for many years, she pled guilty to a controlled substance offense in New Hampshire Superior Court on January 11, 1991. The next year, on April 16, 1992, Immigration and Naturalization Services ("INS") initiated deportation proceedings against her.[1] Although the record of the initial phases of these proceedings is less than lucid, it seems that Bolieiro appeared before the IJ and expressed her intent to seek discretionary relief under former Section 212(c) of the Immigration and Nationality Act ("INA"). <u>See</u> 8 U.S.C.

---

[1] "The INS's enforcement functions have since been transferred to the Department of Homeland Security (DHS)." <u>Chedid</u> v. <u>Holder</u>, 573 F.3d 33, 34 n.1 (1st Cir. 2009).

§ 1182(c), repealed by Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Title III, § 304(b), 110 Stat. 3009, 3009-597. Bolieiro was informed that she should file her application for relief by August 10, 1992, and the IJ continued her case until December 22, 1992.

Bolieiro never filed the application. On September 30, 1992, the IJ found her deportable based on the record of her controlled substance conviction, and also deemed her request for 212(c) relief abandoned because of her failure to file her application by the prescribed deadline. Mailed to her home address, the order of deportation was later returned to sender because Bolieiro had moved without leaving a forwarding address.

Despite the deportation order, Bolieiro remained in the United States. She asserts that she became a confidential informant for Immigration and Customs Enforcement ("ICE") in 1995, and was placed under an order of supervision. She also claims that she married a U.S. citizen in 1997 who was abusive towards her. (She reports that she is now divorced from this person.) On January 24, 1999, she was arrested for domestic assault. This case brought her to the attention of immigration authorities once again and removal proceedings were initiated against her.

On February 12, 1999, Bolieiro filed a motion to reopen before the IJ, with the assistance of counsel. The motion was denied without prejudice because of its failure to conform with

substantive and evidentiary requirements, and the IJ directed Bolieiro to refile "a proper motion, accompanied by the appropriate fee and supported by an affidavit."

On March 10, 1999, Bolieiro submitted another motion. The motion raised a variety of due process and ineffective assistance of counsel arguments. The motion also contended that she was eligible for various forms of relief, including her abandoned application for 212(c) relief. The IJ denied the motion on several grounds, including, inter alia, that the motion was untimely; that she had failed to demonstrate prima facie eligibility for 212(c) relief; and that she had failed to comply with the procedural requirements for raising a claim of ineffective assistance of counsel. After the IJ denied her motion, Bolieiro was deported from the United States on June 3, 1999.

Sometime afer her removal, Bolieiro reentered the country without authorization. After ICE received a tip from a confidential source, federal agents arrested her on May 14, 2011. On June 8, 2011, she was indicted by a federal grand jury for unlawful reentry in violation of 8 U.S.C. § 1326. She pled not guilty to this charge, and subsequently moved to dismiss the indictment. On February 19, 2013, the district court granted the motion and dismissed all charges against her. See United States v.

<u>Bolieiro</u>, 923 F. Supp. 2d 319, 2013 WL 541291 (D. Mass. Feb. 13, 2013).[2]

## B.  Recent Proceedings Before the Agency

With the aid of new counsel, Bolieiro moved to reopen her proceedings before the IJ on December 28, 2011.  This motion raised a number of arguments, including that: the conviction that was the basis of her removal had been vacated on constitutional grounds; her former counsel had provided ineffective assistance; and her deportation order was issued in violation of due process.  The motion sought to reopen her proceedings pursuant to the motion to reopen statute.  In the alternative, Bolieiro appealed to the agency's sua sponte authority to reopen proceedings.  In a supplemental filing, she further asserted that she was eligible for relief under the Violence Against Women Act ("VAWA") because she was a victim of domestic abuse.  The filing noted that she had filed a self-petition with Citizenship and Immigration Services ("USCIS"), an agency within the Department of Homeland Security, as a precursor to obtaining relief under VAWA.  <u>See</u> Part II.B, <u>infra</u>.

On January 31, 2012, the IJ denied Bolieiro's motion, citing the post-departure bar and the BIA's opinion in <u>Matter of Armendarez-Mendez</u>, 24 I. & N. Dec. 646 (BIA 2008).  <u>See</u> <u>also</u> 8 C.F.R. §§ 1003.2(d), 1003.23(b)(1).  Based on those authorities,

_____

[2] The government has appealed the dismissal of the indictment. At the request of the parties, we stayed that appeal pending the resolution of Bolieiro's petition for review.

the IJ concluded that he lacked jurisdiction to consider the motion. The IJ further rejected Bolieiro's due process arguments. Petitioner filed a motion to reconsider with the IJ on February 15, 2012, which was denied in a summary order.

Bolieiro appealed both the denials of her motion to reopen and her motion to reconsider to the BIA. During this time, USCIS approved her VAWA self-petition, thereby fulfilling a prerequisite for Bolieiro to obtain relief under VAWA. On May 29, 2012, the BIA dismissed the appeals. The BIA agreed with the IJ that Bolieiro's motion must be denied for lack of jurisdiction, citing our prior opinion in Pena-Muriel v. Gonzales, 489 F.3d 438 (1st Cir. 2007), and the post-departure regulation. The BIA did not expressly distinguish between the general provisions of the motion to reopen statute, and the "special rule" governing motions to reopen filed by individuals seeking relief under VAWA, despite the fact that those provisions impose different requirements. The BIA also concluded that due process did not require the reopening of petitioner's proceedings in order to address the vacatur of her criminal conviction, because the denial of her motion would not result in a "gross miscarriage of justice." See Matter of C-, 8 I. & N. Dec. 611, 615 (BIA 1960).

After the BIA dismissed her appeal, Bolieiro timely petitioned for our review.

**II.**

Our review of the agency's denial of a motion to reconsider or reopen is for abuse of discretion. Martinez-Lopez v. Holder, 704 F.3d 169, 171 (1st Cir. 2013) (reconsideration); Aponte v. Holder, 683 F.3d 6, 10 (1st Cir. 2012) (reopening). A denial of a motion to reopen is an abuse of discretion if "'the [agency] committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way.'" Bead v. Holder, 703 F.3d 591, 593 (1st Cir. 2013) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)). A denial of a motion to reconsider, for its part, is an abuse of discretion "only when the 'denial was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Martinez-Lopez v. Holder, 704 F.3d 169, 172 (1st Cir. 2013) (quoting Zhang v. INS, 348 F.3d 289, 293 (1st Cir. 2003)).

We review questions of law de novo, "with deference given 'to the BIA's reasonable interpretations of statutes and regulations falling within its purview.'" Aponte, 683 F.3d at 10 (quoting Matos-Santana v. Holder, 660 F.3d 91, 93 (1st Cir. 2011)). The scope of our review encompasses "the BIA's decision as well as any portions of the IJ's opinion adopted by the BIA." Peña-Beltre v. Holder, 622 F.3d 57, 61 (1st Cir. 2010).

**A. Bolieiro's Motion to Reopen and the Applicability of the Post-Departure Bar**

    **1. Timeliness**

Bolieiro argues primarily that the post-departure bar conflicts with the plain language of the motion to reopen statute, 8 U.S.C. § 1229a(c)(7)(A). Our opinion in <u>Perez Santana</u> exhaustively addresses that issue. There, we hold that the post-departure bar cannot be used to preclude a noncitizen from vindicating his statutory right to a motion to reopen. <u>Id.</u>, slip op. at 25-26. We will not repeat the analysis that led to that holding here.[3]

But Bolieiro's case contains a wrinkle not present in Perez Santana's. The instant motion to reopen seeks vacatur of a removal order that was entered almost twenty years before the motion was filed. The motion to reopen statute contains a temporal limitation — "the motion to reopen shall be filed within 90 days of

---

[3] As an additional justification for the post-departure bar's validity, the government contends that the regulation is a "categorical exercise of discretion," reflecting the agency's judgment (possibly unreviewable) that it should not consider motions to reopen filed by noncitizens who have left the country. Setting aside the fact that the agency itself has not relied on this rationale to justify the post-departure bar, an exercise of discretion, categorical or otherwise, must remain consistent with the agency's statutory authority. As our opinion in <u>Perez-Santana</u> explains, the agency does not have the power to prevent a noncitizen from exercising a right granted by the statute's plain language. Stated differently, "[c]asting the post-departure bar as categorical exercise of discretion . . . does not cure the fact that it contravenes clear congressional intent." <u>Contreras-Bocanegra</u> v. <u>Holder</u>, 678 F.3d 811, 819 (10th Cir. 2012) (en banc).

the date of entry of a final administrative order of removal."  8

U.S.C. § 1229a(c)(7)(C)(i).  Focusing on this provision, the

government contends that "there is no conflict between [the

immigration statute] and the Attorney General's regulation, where

Bolieiro's motions were untimely."  The government suggests that

because of its tardiness, Bolieiro's motion falls outside of the

statute's scope and thus "ha[s] no statutory footing."

Accordingly, the argument goes, the motion must be construed as an

appeal to the agency's sua sponte authority to reopen proceedings

at any time.  See 8 C.F.R. § 1003.2(a) ("The Board may at any time

reopen or reconsider on its own motion any case in which it has

rendered a decision."); id. § 1003.23(b)(1) (analogous regulation

for IJs).

    Because the agency's power to reopen proceedings sua

sponte is not codified in statute and operates purely as a creature

of agency discretion, see Matos-Santana, 660 F.3d at 94, the

government further contends that even if the post-departure bar

cannot prevent a noncitizen from filing a motion to reopen pursuant

to the statute, the agency retains the ability to apply the post-

departure bar to any motion that falls outside the statute.

Several of our sister circuits have adopted this rule, despite also

holding that the post-departure bar cannot be applied to

noncitizens invoking their statutory reopening rights.  Compare

Perez-Santana, slip op. at 10 (collecting circuit opinions), with

-10-

Ovalles v. Holder, 577 F.3d 288, 295-96 (5th Cir. 2009) (holding that post-departure bar may be applied to untimely motion to reopen, since such motion "invokes statutory provisions that offer him no relief"); see also Desai v. Att'y Gen., 695 F.3d 267, 270-71 (3d Cir. 2012) (stating that previous holding that post-departure bar conflicted with motion to reopen statute "does not extend to cases like this one, where neither that statutory right nor congressional intent is implicated"); Zhang v. Holder, 617 F.3d 650, 661 (2d Cir. 2010) (stating that agency retains "the authority to limit that jurisdiction and define [sua sponte reopening's] contours through, among other things, the departure bar").

Whatever the merits of this argument, we cannot address it here. Under well-settled principles of administrative law, we must accept or reject the agency's decision based on the rationale the agency provides. See Wiratama v. Mukasey, 538 F.3d 1, 6 (1st Cir. 2008) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)). While alternative grounds for affirming the agency's decision may be evident in the record, a court may not substitute its own rationale to justify the agency's conclusion. See Pina v. Mukasey, 542 F.3d 5, 12 n.7 (1st Cir. 2008) (stating that because "the BIA did not address that issue, . . . we may not conduct our own de novo inquiry" (citing INS v. Ventura, 537 U.S. 12, 16 (2002)). Thus, the proper way to handle an agency error in the ordinary circumstance "'is to remand to the agency for additional

investigation or explanation.'" Ventura, 537 U.S. at 16 (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985)). This principle is known as the "ordinary remand rule." See Castaneda-Castillo v. Holder, 638 F.3d 354, 363 (1st Cir. 2011).

Here, the BIA's dismissal of Bolieiro's appeal was premised on its application of the post-departure bar, as the government acknowledged at oral argument. In applying the bar, however, the BIA did not make a distinction between timely and untimely motions to reopen. Instead, the agency enforced the blanket rule that all such motions were barred "after the alien's departure from the United States." In support of this conclusion, the agency cited 8 C.F.R. § 10023.23(b)(1), which is the version of the post-departure bar applicable to motions before the IJ, as well as the BIA's precedent opinion in Matter of Armendarez-Mendez. Neither the regulation nor Matter of Armendarez-Mendez distinguishes between timely and untimely motions. The suggestion that Bolieiro's motion stands on different "statutory footing" than a timely motion appears nowhere in the BIA's analysis, or in the authorities it relied upon to dismiss her appeal.[4] If the agency wishes to articulate a more nuanced basis for rejecting her motion based upon her motion's untimeliness, it may do so, but we decline

---

[4] Although the BIA's opinion does mention that Bolieiro's motion was filed "long after the statutory deadline for seeking reopening has passed," the BIA made that comment in the context of rejecting her alternative due process-based argument.

to supply that basis on the agency's behalf.  See Halo v. Gonzales, 419 F.3d 15, 18-19 (1st Cir. 2005) ("[A] reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency, and that basis must be set forth with such clarity as to be understandable." (second alteration in original) (citation and internal quotation marks omitted)).

To sum up, in the companion case of Perez Santana, we reject the proposition that the post-departure bar precludes a noncitizen who has departed the country from vindicating her statutory right to seek reopening.  As we have explained, given the basis for the BIA's decision in this case, Bolieiro's and Perez Santana's cases both present the same issue — whether the post-departure bar can prevent a noncitizen from invoking his or her statutory right to file a motion to reopen.  We have concluded that it cannot.  Because we must evaluate the agency's refusal to consider Bolieiro's petition upon the grounds that it has proffered, and because the agency's refusal to consider her motion rested on the same rationale as its refusal to consider Perez Santana's, our holding in Perez Santana compels us to grant Bolieiro's petition as well.[5]

---

[5] As noted, the BIA's opinion also concluded that due process does not require that Bolieiro's proceedings be reopened to address the vacatur of the criminal conviction upon which her removal was based.  Bolieiro contests that determination on appeal as an alternative to her challenge to the post-departure regulation. Because we grant her petition on other grounds, we express no view on the merits of her due process argument or her remaining

-13-

This holding should not be construed as a judgment on whether Bolieiro's motion should be granted. We say only that the agency's ground for refusing to consider her motion does not withstand scrutiny. On remand, if the agency offers an alternative basis for refusing to consider her motion, we will evaluate that basis if and when the case returns to us.

### 2. Equitable Tolling

We do wish to correct a misapprehension on the part of the government because it will be important on remand. Contrary to the government's assertions, Bolieiro's motion does not seek to invoke the agency's sua sponte authority to reopen proceedings, but rather her statutory right to seek reopening. Although she acknowledges that the motion was filed more than ninety days after the entry of Bolieiro's order of deportation (indeed, almost twenty years after), she contends that the time deadline should be equitably tolled in order to permit her to file a motion to reopen. "Equitable tolling applies 'as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising [her] rights.'" Iavorski v. INS, 232 F.3d 124, 129 (2d Cir. 2000) (first alteration in original) (quoting Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)). By excusing tardiness, the doctrine permits a party to invoke the right that she would otherwise be unable to access. In other words, by contending that equitable tolling

contentions.

-14-

should excuse the untimeliness of her motion, Bolieiro's argument is directed at her <u>statutory</u> right to file a motion to reopen, not the agency's sua sponte authority to reopen proceedings. <u>See</u> <u>Singh</u> v. <u>Holder</u>, 658 F.3d 879, 884 (9th Cir. 2011) ("If an alien qualifies for equitable tolling of the time and/or numerical limitations on a motion to reopen, the motion is treated as if it were the one the alien is statutorily entitled to file."); <u>Ortega-Marroquin</u> v. <u>Holder</u>, 640 F.3d 814, 819 (8th Cir. 2011) ("To fall within the scope of the motion-to-reopen statute, Ortega must show that the filing deadline is subject to equitable tolling, thereby excusing its lateness.").[6]

Thus, Bolieiro does in fact seek a statutory foothold for her motion to reopen. This is not to say that Bolieiro's attempt to invoke the statute will be successful, as we have not yet decided whether equitable tolling applies to the statute's ninety-day deadline, despite multiple opportunities to do so. <u>See</u>, <u>e.g.</u>, <u>Romer</u> v. <u>Holder</u>, 663 F.3d 40, 43 (1st Cir. 2011); <u>Neves</u> v. <u>Holder</u>, 613 F.3d 30, 36 (1st Cir. 2010).[7]  It is also not clear that

---

[6] Bolieiro sought sua sponte reopening of her proceedings as well.  This argument was clearly framed in the alternative, however, and her primary contention was grounded in the statute.

[7] Notably, every circuit that has addressed the issue thus far has held that equitable tolling applies to either or both the time and numerical limits to filing motions to reopen.  <u>See</u> <u>Avila-Santoyo</u> v. <u>Att'y Gen.</u>, 713 F.3d 1357, 1362-64 (11th Cir. 2013) (en banc); <u>Yuan Gao</u> v. <u>Mukasey</u>, 519 F.3d 376, 377 (7th Cir. 2008); <u>Ghahremani</u> v. <u>Gonzales</u>, 498 F.3d 993, 999 (9th Cir. 2007); <u>Harchenko</u> v. <u>INS</u>, 379 F.3d 405, 410 (6th Cir. 2004); <u>Riley</u> v. <u>INS</u>,

-15-

Bolieiro would be entitled to equitable tolling of the deadline, even assuming that the deadline could be tolled.  See Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001) (en banc) (setting forth five-factor test used to determine entitlement to equitable tolling). But the government fails to engage with her argument when it contends that her motion necessarily falls outside the statute simply because it is untimely.  The agency should not make a similar error on remand.  Cf. Romer, 663 F.3d at 43 (remanding case for failure to consider applicability of equitable tolling and observing that agency "ignore[d] Romer's argument, ignore[d] arguably applicable law, and cross[ed] the line from merely deficient to plainly arbitrary").

## B.  Bolieiro's VAWA Claims

Bolieiro also sought to reopen her removal proceedings under certain statutory provisions specific to survivors of domestic violence, due to the abuse she had suffered at the hands of her former U.S. citizen husband.  Under VAWA, such individuals may seek unique versions of adjustment of status and cancellation of removal.  Both of these forms of relief offer a pathway for Bolieiro to obtain lawful permanent resident status.  See 8 U.S.C. § 1154(a)(1) (permitting survivor of domestic violence to petition on her own behalf, otherwise known as "self-petition," for

---

310 F.3d 1253, 1258 (10th Cir. 2002); Iavorski v. INS, 232 F.3d 124, 129-30 (2d Cir. 2000).

-16-

adjustment of status); id. § 1229b(b) (setting forth requirements for VAWA "special rule" cancellation); see also Hamilton v. Holder, 680 F.3d 1024, 1026 (8th Cir. 2012) (discussing VAWA cancellation); Ochoa-Artega v. U.S. Att'y Gen., 364 Fed. App'x 614, 617 (11th Cir. 2010) (describing VAWA's self-petitioning processes).[8]  Different procedural requirements govern motions to reopen to the extent that the noncitizen seeks to obtain relief under VAWA.  If the motion seeks to reopen proceedings so that the movant can obtain relief under VAWA, "[a]ny limitation . . . on the deadlines for filing [a motion to reopen] shall not apply."  8 U.S.C. § 1229a(c)(7)(C)(iv)(I).  The VAWA-specific provisions also require that the movant be "physically present in the United States at the time of filing the motion."  Id. § 1229a(c)(7)(C)(iv)(IV).

Noting that she was within in the United States when she filed her motion to reopen under the special rule, Bolieiro argues that the post-departure bar is therefore inapplicable to her motion to the extent it seeks relief under VAWA.  The government responds that Bolieiro was "physically present" in the country only because she had reentered unlawfully after having been deported.

---

[8] Bolieiro has not clearly specified which form of VAWA relief she seeks, or if she seeks both.  She has filed a VAWA self-petition, which is a prerequisite to obtaining adjustment of status.  Her brief before us also suggests that she seeks adjustment.  But her motion to reconsider before the IJ contended that she is "prima facie eligible for VAWA Cancellation of Removal."  As the particular form of VAWA relief Bolieiro seeks is immaterial to this appeal, we leave this issue for the agency and the parties to sort out on remand.

Considering Bolieiro's motion, the government maintains, would unjustly reward her for violating the law, and the statute should not be read to permit such a result.  The government also contends that Bolieiro is ineligible for relief under VAWA, and that her petition should be denied due to futility.

The BIA did not address any of these arguments, instead citing the post-departure bar as its basis for refusing to consider Bolieiro's motion.  The BIA's opinion did not even mention the motion's invocation of both the general provisions of the motion to reopen statute, as well as those specific to individuals seeking VAWA relief.  The agency therefore failed to examine whether Bolieiro's motion, to the extent it seeks reopening to obtain relief under VAWA, may stand on different footing from her invocation of the reopening statute's general provisions.  Having already decided that remand is warranted, we need not dive into this VAWA thicket.  Instead, we simply add those issues to the list of arguments that the agency may consider on remand.  See Campbell v. Holder, 698 F.3d 29, 36 (1st Cir. 2012) ("[S]ince the Board did not reach these issues, neither do we."); Guta-Tolossa v. Holder, 674 F.3d 57, 61 (1st Cir. 2012) ("Where a question is best resolved by the agency in the first instance, or is left primarily in the agency's hands by statute, and the agency has failed to address that question, we generally must remand.").

Urging us to deny the petition nonetheless, the government invokes the "rare circumstances" exception to the ordinary remand rule, contending that Bolieiro has no viable avenues to relief and that the outcome of her proceedings is foregone. See Ventura, 537 U.S. at 16 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (emphasis added)); see also Hussain v. Gonzales, 477 F.3d 153, 158 (4th Cir. 2007) (declining to remand case to BIA "[b]ecause the result of a remand to the Board is a foregone conclusion such that remand would amount to nothing more than a mere formality"). We offer no judgment on the contours of this exception here, except to say that this case falls beyond them. The government's futility arguments rely on complicated legal and factual issues that have been neither ventilated adequately before us, nor addressed by the agency. Although we are not yet in a position to evaluate the merits of the government's contentions, we cannot say that Bolieiro's attempts to obtain relief are doomed. These circumstances counsel strongly in favor of remand.

## III.

For the reasons stated, we <u>grant</u> the petition for review, <u>vacate</u> the order of the BIA, and <u>remand</u> for further proceedings consistent with this opinion.

**<u>So ordered</u>.**